# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **JEFF MICHAEL WELCH,** | )<br>) |
| Petitioner, | ) No. CV 07-2169-PHX-NVW-CRP<br>) |
| vs. | )<br>) **REPORT AND RECOMMENDATION** |
| **CHARLES RYAN, et al.,** | )<br>) |
| Respondents. | )<br>)<br>) |

Petitioner Jeff Welch ("Welch"), presently an inmate of the Arizona State Prison Complex in Florence, Arizona, filed a Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Welch asserts that his ten, consecutive, 17-year sentences for possessing ten separate images of child pornography violate his Eighth Amendment right to be free from cruel and unusual punishment. The Government contests the Petition asserting that the sentences individually are not disproportionate to the crime and that there is no constitutional right to have sentences for separate offenses run concurrently. (Docs. 15, 20, 25).

This Court concludes that the consecutive sentences here are constitutional and that a sentence of 17 years is not "grossly disproportionate" to the crime of sexual exploitation of a minor. It is therefore the Report and Recommendation of this Court that District Judge Wake deny the Petition.

## I. FACTUAL BACKGROUND

In August 2001, Robert Pargmann, the human resources manager at Welch's work, Thrifty Car Rental, discovered that Welch had been visiting internet child pornography sites during the graveyard shift. (Doc. 16-3, Ex. N, p. 26). When Pargmann confronted Welch about his findings, Welch did not deny the accusation. (*Id.* at 29). Pargmann then fired Welch. (*Id.*). On August 30, 2001, the police seized three computer systems from Welch's former workplace. (*Id.* at 55).

Several months later, on November 23, 2001, the police searched Welch's home pursuant to a search warrant and seized ten printed images of child pornography. (Doc. 7-1, Ex. C, p. 18). The state charged Welch with ten counts of sexual exploitation of a minor. (*Id.*) At trial, a pediatrician testified that the children in the images were under the age of 15. (Doc. 16-2, Ex. M, pp. 87-104). On March 19, 2003, based on this evidence, the jury convicted Welch of all ten counts and also found that each picture contained a person under the age of 15. (Doc. 7-1, Ex. A, pp. 4-6). In a separate case, Welch was convicted of two counts of sexual molestation of a child. (Doc. 17, Ex. V, p. 99). The children in that case were nine and four years old, respectively. (Doc. 17, Ex. S, p. 55).

Welch was sentenced for both the molestation case and the exploitation case at the same time, on May 16, 2003. (Doc 17, Ex. Q, p. 5). The court sentenced him to two consecutive, aggravated 35-year sentences for the molestation convictions because Welch admitted that he had previously molested a six-year-old child in Tennessee. (*Id.* at 28-29). The court then sentenced Welch to the presumptive sentence of 17 years for all ten counts in the exploitation case, with the sentences to run consecutively. (*Id.* at 30). The court noted that it found no reason to impose the aggravated sentences for the exploitation offenses because, given the length of the aggregate sentences, there was no need. (*Id.*).

## II. PROCEDURAL HISTORY

On direct appeal, the Arizona Court of Appeals affirmed the conviction and sentence on September 14, 2004. (Doc. 7, Ex. C). The Arizona Supreme Court denied Welch's request for review on February 23, 2005. (Doc. 7, Ex. C). While his petition for review was pending, Welch also filed a notice of post-conviction relief on October 19, 2004. (Doc. 7, Ex. D). In May 2005, appointed counsel filed a Notice of Completion asserting she found no colorable claims. (Doc. 7, Ex. E).

Welch then filed, *pro se*, a Petition For Post-Conviction Relief ("Rule 32 Petition") on June 20, 2005, raising four grounds to vacate the conviction and sentence. (Doc. 7, Ex. F). Welch argued (1) inadmissible evidence was admitted at trial; (2) witness credibility; (3) the constitutionality of A.R.S. § 13-3553; and (4) Welch's sentences were unconstitutional as unreasonably harsh. (Doc. 7, Ex. F). Welch also complained of ineffective assistance of counsel but did not specifically assert that claim. (Doc. 7, Ex. F). In responding to Welch's unreasonably harsh sentence argument, the State cited *State v. Davis*, 206 Ariz. 377 (2003), in which the defendant argued his sentence constituted cruel and unusual punishment. (Doc. 7, Ex. G, p. 5).

The trial court denied Welch's Rule 32 Petition. (Doc. 7, Ex. I). In its denial, the trial court characterized Welch's claim of an unreasonably harsh sentence as a claim of cruel and unusual punishment and found it was without merit. (Doc. 7, Ex. I, p. 3). Welch filed a petition for review with the Arizona Court of Appeals on January 5, 2006. (Doc. 7, Ex. J). In his petition, Welch reasserted the same claims he brought to the trial court, including a more specific claim of ineffective assistance of counsel. (Doc. 7, Ex. J). The Arizona Court of Appeals denied his petition on November 16, 2006. (Doc. 7, Ex. K). Welch timely filed this federal Petition on November 7, 2007. (Doc. 1).

In his petition to this Court, Welch asserted two grounds for relief. Ground I asserted that A.R.S. § 13-3553 was unconstitutionally broad and violated the First Amendment because it did not include an exception for possessing pornographic photos that only appeared to contain children, but were not actually real children. (Doc. 1, p. 5). Ground II

asserted that his punishment violated the Eighth Amendment because it punished possessors of child pornography more than murderers, rapists, and kidnappers. (*Id.* at 6). The Government contested both grounds, arguing that the state statute was not overbroad and not unconstitutionally applied to Welch, and further that Ground II was procedurally defaulted. (Doc. 7, p. 11, 12). On November 13, 2009, this Court submitted a Report and Recommendation ("R&R") to the District Court recommending that it deny Welch's Petition on both Grounds I and II. (Doc. 10, p. 10). In that R&R, this Court found Ground I failed on the merits; the statute was not overbroad. (*Id.* at 5). This Court then found Ground II was not procedurally defaulted but did fail on the merits. (*Id.* at 10). On December 14, 2009, the District Court accepted the R&R with respect to Ground I but remanded the case to this Court with respect to Ground II and ordered briefing on the merits. (Doc. 11, p. 2).

### III. ANALYSIS OF THE PROCEDURAL REQUIREMENTS

### A. TIMELINESS

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations for state prisoners filing federal habeas petitions. 28 U.S.C. § 2244(d)(1). The statute of limitations begins to run from the latest of: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

The Government does not allege the Petition is untimely and it does not appear to be untimely. Welch pursued direct review of his conviction and sentences and while that review was still pending with the Arizona Supreme Court, he filed his collateral Rule 32 petition.

1  The collateral appeal immediately tolled the AEDPA's limitations period. Petitioner filed
2  his habeas petition within the permitted one-year period after the Arizona Court of Appeals
3  denied his collateral review.

### B. PROCEDURAL DEFAULT

The State argues that Welch's claim of cruel and unusual punishment for the sentences he received is procedurally defaulted because in the state courts Welch claimed only that his sentence was unconstitutional as "unreasonably harsh."

Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state prisoner's application for a writ of habeas corpus, the prisoner must have exhausted available state-court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). A state prisoner in a federal habeas action must exhaust his claims in the state courts "by invoking one complete round of the State's established appellate review process" before he may submit those claims in a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Arizona, it is sufficient for a state prisoner to fairly present his claims to the Arizona Court of Appeals; he does not have to appeal those claims to the Arizona Supreme Court. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). Exhaustion of state remedies is required in order to give the "State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations omitted).

A petitioner must make the federal basis of a claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident." *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999). A petitioner may also cite state cases that explicitly analyze the same federal constitutional claim. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc). A claim may also be exhausted if the State's highest court expressly addresses the claim, whether or not it was fairly presented. *Sandgathe v. Maass*, 314 F.3d 371, 376-377 (9th Cir. 2002).

In Welch's *Pro Per* Petition For Post-Conviction Relief filed in Maricopa County Superior Court, he argued his sentence "was unconstitutional as unreasonably harsh (170 years)." (Doc. 7-1, Ex. F, p. 34). In responding to that claim, the State cited *State v. Davis*,

206 Ariz. 377 (2003), a case in which the state court analyzed whether a defendant's sentence violated the Federal Constitution's prohibition of cruel and unusual punishment. (Doc. 7-1, Ex. G, p. 42). The trial court, although denying Welch's claims, addressed the unreasonably harsh argument as an argument against cruel and unusual punishment. Then, in his petition for review, Welch specifically argued this claim as cruel and unusual punishment. The state courts addressed Welch's claim. Welch has exhausted his federal cruel and unusual punishment claim.

## IV.  ANALYSIS OF THE MERITS

### A.  STANDARD OF REVIEW

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412-413 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405-406. The state court's application of Supreme Court law must be more than incorrect or erroneous; it must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ...." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (internal citations omitted). The Supreme Court has recognized the comity interests inherent in 28 U.S.C. § 2254(d), leaving the state courts responsible for their own criminal prosecutions unless "a state court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 26 (2002).

**B.     GROUND II - CRUEL AND UNUSUAL PUNISHMENT**

The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In Ground II, Welch contends the Arizona sentencing laws that led to the 170-year aggregate sentence violate his Eighth Amendment rights. In doing so, he argues that murderers, rapists and serial killers can receive a shorter sentence than someone who possesses child pornography. His argument embodies two separate ideas. First, that separate, consecutive sentences for one instance of possessing ten photographs is unconstitutional. Second, that a sentence of 17 years is grossly disproportionate to the crime of sexual exploitation of a minor and is therefore unconstitutional. He is incorrect on both points.

**1.     CONSECUTIVE SENTENCES**

Welch argues that the Court should analyze his sentences in the aggregate, as 170 years, rather than on an individual basis. However, Eighth Amendment analysis "focuses on the sentence imposed for each specific crime, not on the cumulative sentence." *United States v. Aiello*, 864 F2.d 257, 265 (2nd Cir. 1988). As the Supreme Court has long made clear, if the defendant

> has subjected himself to a severe penalty, it is simply because he has committed a great many such offenses. It would scarcely be competent for a person to assail the constitutionality of the statute prescribing a punishment for burglary on the ground that he had committed so many burglaries that, if punishment for each were inflicted on him, he might be kept in prison for life.

*O'Neil v. State of Vermont*, 144 U.S. 323, 331 (1892). Even if this Court did consider Welch's sentence in the aggregate under a proportionality analysis, the result would be the same.[1] Mandatory consecutive sentences do not violate the Eighth Amendment's

---

[1] The Circuit Courts reviewing a federal statute that bears a substantial similarity to the Arizona one have found no Eighth Amendment violation. The federal statute provides for penalties related to the use of guns in drug trafficking. That statute provides, in pertinent part:
   [N]o term of imprisonment imposed on a person under this subsection shall run concurrently

prohibition of cruel and unusual punishment. So long as the legislature explicitly provides for the punishment, there is no constitutional issue. *Carter v. McClaughry*, 183 U.S. 365, 394 (1902). The United States Supreme Court has held on a number of occasions and in several contexts that consecutive sentences do not pose a constitutional problem where the legislature has specifically provided for them. *See Carter*, 183 U.S. at 394 ("Cumulative sentences are not cumulative punishments, and a single sentence for several offenses, in excess of that prescribed for one offense, may be authorized by statute."); Gore *v. United States*, 357 U.S. 386, 392 (1958) (holding that Congress clearly has the power to determine separate sentences for separate offenses); *Whalen v. United States*, 445 U.S. 684, 689 (1980) (noting that it is fully within the power of Congress to provide cumulative punishments, the only question was whether or not it had done so).

---

with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

18 U.S.C.A. § 924(c)(1)(D)(ii) (West 2010). The Second, Third, Fourth, Sixth, Seventh, and Ninth Circuits have all passed their judgment on the constitutionality of the mandatory consecutive sentences imposed by this statute. In each case, they have upheld the statute against attack under the Eighth Amendment's prohibition of cruel and unusual punishment. *United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003) (rejecting an Eighth Amendment proportionality challenge to a prison term of 240 years plus a consecutive term of life imprisonment for offenses related to the 1993 bombing of the World Trade Center, including two mandatory consecutive 30-year terms); *United States v. Walker*, 473 F.3d 71, 82-83 (3d Cir. 2007) (holding 55-year mandatory consecutive sentence not violative of proportionality principle); *States v. Khan*, 461 F.3d 477, 494-95 (4th Cir. 2006) (rejecting Eighth Amendment challenge to sentences of 120 months, 300 months, and life imprisonment imposed consecutively pursuant to § 924(c)(1)); *United States v. Beverly*, 369 F.3d 516, 536-37 (6th Cir. 2004) (rejecting proportionality challenge to a sentence of 71.5 years, mostly mandated by violations of § 924(c)(1), even though defendant had no felony history); *United States v. Arrington*, 159 F.3d 1069, 1073 (7th Cir. 1998) (finding Eighth Amendment did not prohibit 65-year mandatory consecutive sentence imposed for four violations of § 924(c)(1)); *United States v. Hungerford*, 465 F.3d 1113, 1118 (9th Cir. 2006) (rejecting argument that 155-year cumulative consecutive sentence for seven violations of § 924(c)(1) violated the Eighth Amendment); *United States v. Parker*, 241 F.3d 1114 (9th Cir. 2001) (rejecting Eighth Amendment challenge to 888-month sentence that included 780 months for four violations of § 924(c)(1) charged in the same indictment). Based on this precedent, there is no constitutional issue presented when a legislature specifically authorizes – or mandates – consecutive sentences for multiple violations of a statute.

There is also no constitutional right to receive sentences concurrently; rather, the "specification of the regime for administering multiple sentences has long been considered the prerogative of state legislatures." *Oregon v. Ice*, ___ U.S. ___, 129 S. Ct. 711, 717 (2009). In Arizona, the legislature has mandated consecutive sentences for the dangerous crimes against children for which Welch was convicted. A.R.S. § 13-604.01(K) (West 2001). Because of the legislature's determination, Welch's consecutive sentences are constitutional.

Although Welch has not explicitly stated this in his Petition, this Court infers that he is also contesting his separate *convictions* based on each image, a gradation that led to his 170-year aggregate sentence. Although this argument falls more properly under the Fifth Amendment's Double Jeopardy clause,[2] this Court assumes that the imposition of a punishment in an order of magnitude higher than what the legislature actually authorized would violate the Eighth Amendment as well. *See Whalen v. United States*, 445 U.S. at 689 n.4 (noting that the "Due Process Clause of the Fourteenth Amendment, however, would presumably prohibit state courts from depriving persons of liberty or property as punishment for criminal conduct except to the extent authorized by state law"). The punishment would be more than what is authorized by the Arizona legislature only if the legislature did not intend each photograph to constitute a separate crime. This Court accordingly turns to the Arizona statute in question to determine if the Arizona legislature intended for possession of each photograph to constitute a separate offense. In undertaking this analysis, the Court is mindful that "state courts are the ultimate expositors of state law . . . and that [this Court is] bound by their constructions except in extreme circumstances." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). The statute provides, in pertinent part:

---

[2] "The Fifth Amendment guarantee against double jeopardy protects not only against a second trial for the same offense, but also "against multiple punishments for the same offense." *Whalen*, 445 U.S. at 688 (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

>    **A.** A person commits sexual exploitation of a minor by knowingly:
>
>    . . .
>
>    2. Distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging *any* visual depiction in which minors are engaged in exploitive exhibition or other sexual conduct.
>
>    . . .
>
>    **C.** Sexual exploitation of a minor is a class 2 felony and if the minor is under fifteen years of age it is punishable pursuant to § 13-604.01.

A.R.S. § 13-3553 (West 2001) (emphasis added). Subsection (A)(2) makes the possession of "any visual depiction" an offense. The plain language of the statute appears to make the possession of one visual depiction a single offense under the law. What is not clear from the statute is what happens when a person possesses more than one visual depiction. The statute does not explicitly provide for different units of prosecution based on the number of images possessed. This ambiguity could support reading the statute as criminalizing the ongoing act of possessing any one or more visual depictions. The legislative history of the statute would certainly support this interpretation.[3] On the other

---

[3] There are several occasions where the history suggests the legislature did not consider each image to be a separate offense. For example, a representative from the Pima County Attorneys Office stated that criminalizing the "possessing of *pictures* of minors" would be helpful to prosecuting child molesters. Ariz. Sen. Jud. Comm., *Minutes of Committee on Judiciary: Hearing on H.B. 2127*, 36th Leg., 1st Reg. Sess. (March 29, 1983). Later, in 1996, senators expressed concern over "how the statute could be applied to parents who have nude *pictures* of their babies." Ariz. Sen. Jud. Comm., *Minutes of Committee on Judiciary: Hearing on S.B. 1050*, 42nd Leg., 2nd Reg. Sess. (January 16, 1996) (emphasis added). In response, another senator explained that the "prosecution would have to show beyond a reasonable doubt the *pictures* were used exploitively." *Id.* (emphasis added).

Again in 1999, it appears the legislature considered multiple images to be a single offense under the statute; the final fact sheet the senate released on amendments to sex crimes stated that they "[expand] the current prohibition to produce, exhibit, sell or purchase visual *depictions* of minors..." Ariz. Sen. Conf. Comm., *Final Revised Fact Sheet on S.B. 1279*, 44th Leg., 1st Reg. Sess. (June 10, 1999) (emphasis added). And the next year the legislature also provided immunity and affirmative defenses to anyone "who upon discovery and in good faith reports the discovery of visual *depictions* of sexual exploitation of a minor."

hand, the history would also support finding that the legislature intended each image to count as a separate offense.[4] This Court need not reach the question of legislative intent, for the Arizona Supreme Court has passed judgment on this very issue.

In *State v. Berger*, 212 Ariz. 473 (2006), the Arizona Supreme Court considered an appeal substantially similar to the one here. In that case, the petitioner had been convicted of 20 separate counts of sexual exploitation of a minor in violation of § 13-3553 for possessing 20 separate images of child pornography. *Id.* at 474. In denying his

---

Ariz. H.B. 2428, 44th Leg., 2nd Reg. sess. (April 5, 2000).

[4] With its enactment of the statute in 1978, the legislature enumerated a number of findings that provided some background for its decision to enact the statute. 1978 Ariz. Sess. Laws, ch. 200, § 2. Among these findings, the legislature noted the harms to the child victims depicted in the pornography, including that the distribution of the pornography is "a continuing cause of harm to the child participants and that it further develops the climate encouraging the sexual exploitation of other children." *Id.* at § 2(A)(6). They also found that "[p]ornographic materials depicting children as participants are frequently utilized to lure other children into sexual conduct." They further noted that one of the public policies behind the statute was to "protect all children of this state from being sexually exploited." *Id.* at § 2(B)(1).

The Arizona legislature has also had several other occasions to consider the scope of the statute. Before the amendment in 1983 passed, criminalizing possession of child pornography, a senator questioned "how anyone would know whether *a* person in *a* photo is *a* minor." Ariz. Sen. Jud. Comm., *Minutes of Committee on Judiciary: Hearing on H.B. 2127*, 36th Leg., 1st Reg. Sess. (March 29, 1983) (emphasis added). The senator clearly contemplated that a single photo would constitute a violation of the statute. Eighteen years later, the Senate Judiciary Committee considered an amendment to A.R.S. § 13-3553; in the minute entry on H.B. 2223, the research analyst explained the amendment would "[define] minor in the sexual exploitation statute as a person or persons who were under 18 years of age at the time *the* visual depiction was created, adapted or modified." Ariz. Sen. Jud. Comm., *Minutes of Committee on Judiciary: Hearing on H.B. 2223*, 45th Leg., 1st Reg. Sess. (April 10, 2001) (emphasis added). Once again, the legislature considered the singular nature of offensive material that would constitute a violation of the statute.

Considering that each pornographic image of a child stands to be a "continuing cause of harm" to the child and could also be used to "lure other children into sexual conduct" and thus undermine the public policy of "[protecting] all children of this state from being sexually exploited," it is logical to conclude that the legislature intended each such image to constitute a separate offense under the statute. 1978 Ariz. Sess. Laws, ch. 200, § 2(A)(5)-(6), (B)(1).

1  Eighth Amendment claim, the court noted that the petitioner could not contest the
2  charging of twenty separate counts as improper because "each count was based on a
3  different video or photo image, the images involved some fifteen different child victims,
4  and [he] had accumulated the images over a six-year period." *Id.* at 478. With *Berger*
5  the Arizona Supreme Court determined each image of child pornography constitutes a
6  separate offense under § 13-3553.

7  Although this Court might have decided the issue differently in light of the
8  ambiguity in the statute and the legislative history, the question before this Court is not
9  whether the Arizona court was correct in its interpretation of state law. Rather, the Court
10 must consider only whether Arizona's interpretation was contrary to, or an unreasonable
11 application of the federal law as established by the Supreme Court. Federal law requires
12 state courts not impose sentences unauthorized by state legislatures. *See e.g.*, *Blakely v.*
13 *Washington*, 542 U.S. 296, 303 (2004); *Whalen*, 445 U.S. at 689 n. 4. In concluding that
14 each pornographic image is a separate offense, the Arizona Supreme Court thoroughly
15 analyzed the statute's legislative history. *Berger*, 212 Ariz. at 478. This Court cannot say
16 that the court's conclusion was an unreasonable interpretation, nor was it contrary to, or
17 an unreasonable application of, clearly established federal law. Nor can this Court
18 conclude the state court interpretation is an "extreme circumstance" warranting federal
19 review. *Mullaney*, 421 U.S. at 691.

20 This Court therefore concludes, in light of the plausible interpretation of the
21 statute's plain language, the legislative history, and the Arizona Supreme Court's
22 interpretation, that the intent of the legislature was to criminalize the possession of each
23 image of child pornography. The federal judiciary does not sit as a super-legislature to
24 rewrite state law that seems, in our opinion, unsound or unfair. Our concern is only with
25 ensuring compliance with the Federal Constitution. Because the Arizona legislature
26 intended for each image to count as a separate offense, there is no constitutional issue
27 under the Eighth or Fourteenth Amendments with Welch's separate convictions and
28 consecutive sentences. *Bell v. United States*, 349 U.S. 81, 82-83 (1955).

## 2. PROPORTIONALITY OF THE SENTENCE

The Court next turns to the second idea embodied in Welch's claim: that 17 years is a grossly disproportionate sentence for the crime of sexual exploitation of a minor. The Eighth Amendment prohibits grossly disproportionate sentences. The Supreme Court has, for more than a quarter-century, explicitly acknowledged that the Eighth Amendment embodies a narrow proportionality principle. *Solem v. Helm*, 463 U.S. 277, 284 (1983) (holding that "[t]he final clause [of the Eighth Amendment] prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed"). The contours of this principle have been the subject of much debate among the members of the Supreme Court. As Justice O'Connor noted, "our precedents in this area have not been a model of clarity." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). There is, however, a basic framework that this Court can follow, as laid out by Justice Kennedy in *Harmelin v. Michigan*, 501 U.S. 957 (1991) and employed by Justice O'Connor in *Ewing v. California*, 538 U.S. 11 (2003).[5] Five principles undergird the proportionality principle:

> (1) Establishing a relationship between a crime and a sentence involves a penological judgment that is inherently a legislative, not judicial function;
> (2) The Eighth Amendment does not mandate any one penological theory;
> (3) The federal structure assures variation in underlying penological theories and the sentences chosen for specific crimes;
> (4) Proportionality review should be informed by objective factors as much as possible.
> (5) The Eighth Amendment does not require strict proportionality. It only prohibits sentences that are "grossly disproportionate" to the crime.

*Harmelin*, 501 U.S. at 998-1001. The Court bears these principles in mind as it evaluates Welch's sentence.

---

[5] These Justice's opinions are the controlling precedent in these cases because they represent the views of the Justices concurring in the judgment on the narrowest grounds. *See, e.g., Marks v. U.S.*, 430 U.S. 188, 193 (1977).

Additionally, under Supreme Court precedent, this Court recognizes that substantial deference is owed to the State legislature. Therefore, at the outset the Court determines whether the Arizona legislature had a "reasonable basis" for believing that a 17-year sentence for possession of child pornography "advance[s] the goals of [its] criminal justice system in any substantial way." *Ewing*, 538 U.S. at 28 (alterations in original). This Court concludes that it did. The Supreme Court has noted a State's interest in criminalizing child pornography:

> It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.' ... The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child.

*Osborne v. Ohio*, 495 U.S. 103, 109 (1990) (quoting *New York v. Ferber*, 458 U.S. 747, 756-758 (1982)). Indeed, the Court found it understandable that a state would try "to stamp out this vice at all levels in the distribution chain." *Id.* at 110. The Court further noted that child pornography's "continued existence causes the child victims continuing harm by haunting the children in years to come" and that "evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." *Id.* at 111.

The Arizona Supreme Court also explicitly held that the Arizona legislature had a reasonable basis for enacting A.R.S. § 13-3553. *State v. Berger*, 212 Ariz. 473, 478 (2006). In that case, the court found that the legislature was concerned with "a series of harms to child victims" and that prosecutors advocated for the 1983 amendment criminalizing possession because it would "aid in prosecuting child molesters." *Id.* The court also noted the legislature targeted possession of child pornography because it was one of a number of "dangerous crimes against children" under A.R.S. § 13-604.01 that would entail a "lengthy [period] of incarceration ... intended to punish and deter those predators who pose a direct and continuing threat to the children of Arizona." *Id.* (quoting *State v. Williams*, 175 Ariz. 98, 102 (1993)) (internal quotation marks omitted).

- 14 -

Given the United States Supreme Court's acknowledgement of state interest in criminalizing child pornography, the legislative history of the Arizona statute, and the Arizona Supreme Court's interpretation of the statute, this Court concludes that the Arizona legislature had a reasonable basis for believing that a 17-year sentence would advance the goals of Arizona's criminal justice system.

This Court next analyzes the proportionality between Welch's crime and his sentence. In weighing the gravity of the offense with the severity of the sentence, this Court does not consider his sentence in the abstract. Rather, the Court "must place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." *Ewing*, 538 U.S. at 1189-1190. In addition, a showing that a state's choice of punishment is the harshest in the Union does not support an inference of gross disproportionality. *Rummel v. Estelle*, 445 U.S. 263, 282 (noting that "[a]bsent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State"). Except in truly extreme situations, "the length of the sentence actually imposed is purely a matter of legislative prerogative." *Hutto v. Davis*, 454 U.S. 370, 373 (1982). Therefore, "successful challenges to the proportionality of particular sentences should be exceedingly rare." *Id.* at 374.

A brief review of precedent reveals that the Supreme Court considers more serious sentences for less serious crimes to be consistent with the Eighth Amendment. In *Rummel v. Estelle*, the petitioner sought habeas relief for receiving a life sentence with possibility of parole for a third felony conviction - "obtaining $120.75 by false pretenses." 445 U.S. at 266. The Court affirmed his sentence. *Id.* at 285. In *Hutto v. Davis*, the petitioner sought habeas relief for receiving consecutive 20-year sentences for possessing nine ounces of marijuana. 454 U.S. at 371. The Court affirmed his sentences. *Id.* at 373. In *Harmelin v. Michigan*, the court affirmed a sentence of life imprisonment without possibility of parole for a first time offender convicted of possessing 672 grams

of cocaine. 501 U.S. at 961. In reaching this conclusion, the court noted that "[f]ew problems affecting the health and welfare of our population, *particularly our young*, cause greater concern than the escalating use of controlled substances." *Id.* at 1003 (quoting *United States v. Mendenhall*, 446 U.S. 544, 561 (1980) (Powell, J., concurring in part and concurring in the judgment)) (emphasis added). Finally, in *Ewing v. California*, the Court affirmed a sentence of 25 years to life pursuant to California's "three strikes" law for a man who stole three golf clubs valued at just under $1200. 538 U.S. at 30-31.

There have only been three times in the last century when the Supreme Court invalidated a sentence. The first was *Weems v. United States.*, 217 U.S. 349, 382 (1910), where the Court invalidated the punishment of *cadena temporal*[6] for the crime of falsifying a public record. The next was in *Solem v. Helm*, where the petitioner received a sentence of life without parole for uttering a "no account" check for $100 because he was a recidivist offender. 463 U.S. at 281. The Court placed significant weight on the lack of violence in Helm's criminal history and the relatively minor nature of the crimes in deciding that his sentence was grossly disproportionate. *Id.* at 297. Finally, in May of this year, the Court invalidated a sentence of life without parole for a recidivist offender who committed a non-homicide crime as a juvenile. *Graham v. Florida*, ___ U.S. ___, 130 S. Ct. 2011, 2034 (2010).

Here, Welch's sentence does not support an inference of gross disproportionality. Welch does not have a clean record. In 1987 he was convicted of felony aggravated sexual battery against a 6-year-old girl. Shortly before he was convicted of possessing these ten photos, he was also convicted of molesting a 3-year-old and 6-year-old girl. This history demonstrates Welch is exactly the type of sexual predator that the Arizona

---

[6] *Cadena temporal* is an old Spanish form of punishment which required "those sentenced . . . [to] labor for the benefit of the state. They shall always carry a chain at the ankle, hanging from the wrists; they shall be employed at hard and painful labor, and shall receive no assistance whatsoever from without the institution." *Weems*, 217 U.S. at 364.

- 16 -

legislature hopes to protect society against through its laws criminalizing possession of child pornography.

Nor does Welch argue his crime, a "dangerous crime against children," is not serious. Indeed, his actions directly oppose a compelling State interest - protecting children. The State's interest in protecting children is so strong that it can, with due process, terminate parental rights. *Santosky v. Kramer*, 455 U.S. 745, 753-754 (1982). That Arizona wishes to severely penalize possessors of child pornography, a group of felons the Supreme Court has noted are likely to be child molesters themselves,[7] comports with the Federal Constitution.

The serious nature of the crime involved here also weighs against an inference of disproportionality. The photographs of children exploited for sexual purposes continue to damage the children depicted. They may be used to lure more children into child pornography or molestation. There is evidence that victims of molestation may grow up to be molesters themselves. *See* Sherry L. Scott, *Fairness to the Victim: Federal Rules of Evidence 413 and 414 Admit Propensity Evidence in Sexual Offender Trials*, 35 Hous. L. Rev. 1729, 1745 (1999). In short, these photographs stand to inflict generations of damage on the people of Arizona. Arizona takes this threat seriously, and has chosen to implement one of the harshest punishments for possessors of child pornography in the nation. However, the relative harshness of Arizona's law is not enough to show that the sentence at issue here is grossly disproportionate. The gravity of Welch's offense is serious. His sentence, though severe, is not enough to give rise to an inference of gross disproportionality.

---

[7] "Child pornography is often used as part of a method of seducing child victims. A child who is reluctant to engage in sexual activity with an adult or to pose for sexually explicit photos can sometimes be convinced by viewing other children having 'fun' participating in the activity." *Osborne*, 495 U.S. at 111 (quoting 1 Attorney General's Commission on Pornography, Final Report 649 (1986)).

Courts need not consider an intra- or inter-jurisdictional analysis of comparable crimes and punishments unless there has been an initial inference of gross disproportionality. *Harmelin*, 501 U.S. at 1005. When the crime in question is a serious one, such an analysis is especially unnecessary. *Id.* at 1004. Because Welch has not made an initial inference of gross disproportionality and his crime is a serious one, this Court concludes it need not engage in a protracted analysis of comparable crimes and punishment within and among the states and the federal government.

The state courts' determination that Welch's ten, consecutive, 17-year sentences for possessing ten images of child pornography was constitutional is not contrary to nor an unreasonable application of federal law. The Arizona legislature had a reasonable basis for enacting its law. Welch's individual sentences do not give rise to an inference of gross disproportionality. His sentences are constitutional.

**V.  RECOMMENDATION**

As Justice Hurwitz and Justice Berch recognized in *State v. Berger*, 212 Ariz. at 484, 488-89 (Hurwitz, J., concurring, and Berch, J., concurring in part and dissenting in part), there is intuitive support for the premise that a 170 year sentence for possessing ten images of child pornography is extraordinarily long, potentially violative of the Eighth Amendment. However, United States Supreme Court decisions are not supportive of Welch's position. Any change to that jurisprudence cannot take place in a habeas action such as this one, where relief can only be granted when the state courts have misapplied "clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). No such finding can be made in this case. Relief must be denied.

Based on the foregoing, the Magistrate Judge recommends that the District Court, after its independent review and analysis, enter an order DENYING the Petition for Writ of Habeas Corpus.

Pursuant to 28 U.S.C. § 636(b), any part may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that

any objections filed are to be identified with the following case number: **CV 07-2169-PHX-NVW**.

The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner and counsel for Respondents.

DATED this 16th day of July, 2010.

*/s/ Charles R. Pyle*
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE